My name is Craig Wilkie. I'm a Deputy Federal Public Defender from Santa Ana, California. And I am here representing Mario Andres Hernandez-Garcia. What's his status at the moment? He is currently in INS detention. He's being held there by the INS under a regulation that permits them to hold the person pending resolution of a related case. And that is his current status. He's in INS custody. Well, I guess I should ask your opposing counsel, but I assume that means that when his case is decided here, he'll be deported? Very likely, depending on the outcome of this case. Let's assume he loses the case. If he loses this case, what will happen here likely is he'll simply reinstate an earlier deportation order. He'll be administratively deported, essentially, without any ability to seek review or even appear before an immigration judge. Is there any, if he were to be deported, the supervised release term, would it have any effect on anything? Would he need to come back again, which appears likely? It begins running from the date of his release on January 7th. If he does come back unlawfully and does not report to his probation officer, he would be in violation. So the length of the term of supervised release does have an effect on him. But he'd be in violation of the law anyway if he came back. Well, but the supervised release term, if it's a lesser term, for instance, would expire at some time. And so, therefore, if he was found at some later date outside of the expiration term of the supervised release, while he may be subject to new criminal penalties, he wouldn't be subject to additional penalties based on the violation of the supervised release. Does the supervised release say that he can't be deported? No. His supervised release says he does not have to report. Once he is deported, he does not have to report to his probation officer during the period in which he is out of the country. So he wouldn't be in violation if he came back. He would only be in violation if he came back and failed to report. He would be in violation of 1326. He would be in violation of 1326 for coming back and also for failing to report if he came back and failed to report to his probation officer. And typically what the procedure is, is that he will be found to be in violation, receive an additional term then, as well as being prosecuted again for a new violation of 1326. So it does have some potential effect on him. Why is this case here? This case is here. It's here because he has been from day one contending that he has not sustained an aggravated felony conviction. It is particularly important in the Central District of California, this finding, because the policy of the United States Attorney's Office is not to prosecute non-aggravated felons for these crimes. And from day one, he rejected a fast-track plea offer and contended, which was generally a favorable plea offer. He was contending from day one that he is not an aggravated felon. We litigated that issue at every step of the way in the district court. And finally, when it came up to sentencing, the district court ruled in our favor with respect to one of the priors, but ruled against us with respect to the other. He appealed that to this Court, not only seeking to reduce his sentence, but seeking some judicial relief for this finding about whether his priors are aggravated felonies. As this Court's aware, that particular finding has significant consequences to him well beyond the criminal consequences. That is, it is essentially the death penalty for immigration law. If he has an aggravated felony conviction, he is precluded from lawfully reentering or even applying for permission to reenter for 20 years. Let me ask you this. Let's assume just for a moment that he does have, that it's decided that it's an aggravated felony. Is there any reason after that to decide anything else? If the Court decides that there is an aggravated felony, I believe that the Court – well, I think the Court does find there's an aggravated felony. Then the issue of the Rule 12 issue is mooted out by that point. And if the Court finds there is an aggravated felony, that either one is an aggravated felony, no, I would submit that the case would then be mooted out. Ginsburg. Was he convicted under 2800.2A or B? He was convicted under the California Vehicle Code section prohibiting reckless endangerment during flight, and that is – it's A, but I don't believe those are separate statutes. B is simply a definitional statute, is how I believe that statute is read. And there is – he was convicted by a guilty plea, and the charging document charges him with a violation of 2800.2A. But I don't believe that B defines a separate crime. It merely defines willful and wanton disregard for the safety of persons or property as indicated in subsection A. I would like to address, though, the Rule 12 issue, because I think that it is critical to this case, and it also would resolve the potential mootness issue that the Court has asked us to brief. If the Court were to conclude that neither one were aggravated felonies, I would ask the Court to also address the Rule 12 issue, because Mr. Hernandez would then have the opportunity to withdraw his guilty plea. And as I've indicated, the policy in this district is not even to go forward by the U.S. Attorney's Office in those types of cases. And so I think that the issue is ripe, and it's one of those issues that we'll have a difficult time getting before this Court. But it's important. And it's important because it simply calls for a straightforward interpretation of what a district court's obligations are when confronted with a purely legal motion prior to trial. And that's what we had here. We asked the district court for a purely legal ruling prior to trial that had substantial impact on how this case would proceed. And the government opposed that. And the court, the district court, ruled that it was not required to make that finding at this time. But I still haven't heard any explanation for the government what legitimate interest the government has in not resolving a purely legal issue prior to trial or prior to some proceeding. The government puts these allegations in the indictment because they would seek to prove these allegations to a jury. Yet Mr. Hernandez or a defendant like Mr. Hernandez, all he is trying to do is challenge the legality of the allegation in the charge. No facts that could come out at trial are pertinent to resolving the issue. It's a purely legal issue. Yet the government has taken the position from the beginning that there should be no resolution of this prior to trial. And I believe that that's contrary to the plain language of Rule 12 and that good cause, which is what the district court must find to defer ruling on this issue, is simply limited to those situations where the developing facts before the trial or fact would be of assistance in resolving the motion. And that's not what was at issue here. Go into the California Vehicle Code 2800.2 section. The government's argument is, simply equates a reckless state of mind with crime of violence. The government essentially contends that if the crime requires recklessness, then therefore it is a crime of violence. You know, there's a case that's been argued and submitted. Are you familiar with the U.S.C. Campus loyalty? No, I'm not, Your Honor. Because another panel had that question of whether violation of 2800.2 is a categorical crime of violence. And so we couldn't answer that question here. But there is a difference, I think, in that I think that when the defendant in that case was convicted, there was no section B. And when your defendant was convicted, there was a section B. I don't know that that changes anything or that it does or doesn't. Well, I think section B is critical for my second argument about why it's not a crime of violence, because certainly a crime of violence does require recklessness. And section B allows a conviction to be sustained simply under a negligence theory because it allows a conviction to be sustained by free traffic violations. All right. Now, your case, however, where he pled guilty to endangering his niece, was it, or daughter? His daughter was in the car. He put his daughter in danger while committing this crime, yes. Why doesn't that, assuming it's not categorical, why aren't those facts sufficient? Because the admission itself is no different than the facts of Hernandez-Castellanos, that essentially what he's admitting to is acting recklessly. And what Hernandez-Castellanos advises us is that a substantial risk of putting somebody in danger, and the language there was that the defendant – Okay. But that's not an answer to the B changes things. That's just – It's two different issues. I think there's two different arguments there. One is that B does change things because B allows a conviction under this statute to be sustained on negligence. That would be true of the categorical challenge. But it doesn't change the fact of whether these facts that he pled to would constitute a violation, even if there were no B. The facts that he pled to suggest something beyond mere negligence, I would agree. But under that situation, if the Court were to consider those under the modified categorical analysis, essentially the case falls within or is analogous to the Hernandez-Castellanos case, where simply requiring or a statute that requires or an admission in this case that he put somebody in danger is not the same as an admission that the offense involves a substantial risk that physical force, i.e., violence, will be used. Those are two different questions. And to conflate those two would turn every crime that requires a mental state of recklessness into a crime of violence. Doesn't it take it out of the B category and put it back into the A violation, whether A or A or is or is not categorical violation? I see what the Court did. You're talking, doesn't the admission during the guilty plea take it out of the B category because by admitting that, he's implicitly admitting he's not being convicted by violating three or more traffic laws. He's admitting that. I would agree with the Court's reasoning there, yes. It does. So we have to wait campus where to in any event. I did not know that. But I would — I'm not sure that case is necessarily controlling as well, though, because here we are looking to the specific facts of the admission during the guilty plea. And again, I would ask the Court to compare those — that admission with what the offense required under Hernandez-Castellanos. And that was simply — the Court there made it clear that an admission of this sort is not the admission of substantial risk that physical force will be used. It's not the same to say that somebody may get hurt. It's not the same as saying the defendant — there's a risk the defendant will use violence. And that is the distinction I would draw. I would reserve remaining time to respond to the government's arguments on the cross-appeal. Thank you. Good morning, Your Honors. May it please the Court. My name is Richard Lee. I'm appearing on behalf of the United States. At the outset, I'd like to reserve a portion of my time for rebuttal, and I will do my best to monitor. You don't get rebuttal. Your Honors, my understanding as a cross-appellant, I wasn't held to some. Oh, you're a cross-appellant? Well, I — Yeah, but why don't you just make your arguments? It's not like you have a lot of — Fair enough, Your Honor. With regards to the issue raised by a defendant in his opening argument, I think this case is pretty different than Hernandez-Castellano's. The Hernandez-Castellano's case, first of all, only did the first part of the Taylor analysis. They never got to that second part of looking at the underlying conviction documents or any other judicially noticeable facts. Are you familiar with the Campos-Forte case? I am not, Your Honor, and I apologize for that. All right. With regards to the Hernandez-Castellano's case, however, in that case, the Court — I think that the facts of that case are factually distinguishable from the facts of this case. In that case, that was under the felony endangerment law. And the Court there found that, categorically, that law could not constitute a crime of violence because it encompassed situations that would not qualify as an aggravated felony. And some of the examples that the Court cited in that decision were, for instance, leaving a child alone in a car in a hot day. At that point, the defendant's action would create a risk of injury, but that injury wasn't the result of physical force. Another example was leaving an infant near a pool or a child climbing into a container with a hazardous substance. If a defendant in that situation were to leave a refrigerator out on the street, that would be reckless conduct. But it's not — it doesn't necessarily follow that that act of leaving it is the requisite force for purposes of an aggravated felony. 2800.2 is pretty different in that regard. In that regard, the entire situation is driving a car recklessly creates the substantial risk that physical harm will occur to either a person or to property. With regards to the government's cross-appeal, there are two issues before the Court. The first is with regards to the departure granted by the district court in cultural assimilation. And before I proceed on that, I would like to note that there is another case, United States v. Leticia Paniagua-Ortiz, which is also a related case that is dealing with that same issue. And that case has been argued and submitted, I believe. I believe under Phillips, the Phillips Court last week set down that the proper standard of review is de novo under the PROTECT Act for cases pending on appeal on the effective date. The case here is whether or not this defendant satisfies the — or is eligible for the downward departure based on cultural assimilation. Is he so sufficiently out of the heartland to justify a departure? And I would submit that he's not. Specifically, this defendant is different than the defendant — And it would not change anything? He would not serve any more time now? Yes. My understanding is he is currently in INS custody. The government did send a letter. And it's my understanding the INS is holding him pending further information from the U.S. Attorney's Office. If this Court reverses the district court's decision to downward depart, it's my understanding that the U.S. Marshals could then bring him back into the custody of the Bureau of Prisons, and he could serve an additional six months. But I thought the letter said that that would not happen. You know, I do recall exactly what the Court is referring to, and I apologize, but it's not stated very well in the letter. And it's my understanding my representation now is actually how it would work. You're not seriously saying that if we did that, you really want to put him back into prison? You're waiting to deport him, aren't you? Yes, Your Honor, but — Do you really want to put him back in prison on the ground that he shouldn't have had that departure? I don't know. Well, I personally have a lot of discretion in that regard, but it's my understanding that if this Court were to reverse the district court, that they would reacquire him and put him back into the Bureau of Prisons to serve the additional six months. Well, I wouldn't hold my breath for that. Well, would the Court like to actually hear argument on the cultural assimilation departure, or would you like me to move on to the felony relating to narcotics? Move on to what? To the underlying felony relating to — Oh, on your cross appeal? Yes. I don't really care. Don't you think you're going to win on the main appeal? I'm sorry, Your Honor? Oh, well, with regard — I do have confidence that we will win on the main appeal If the Court decides that the vehicle code violation or conviction is an aggravated felony, the Court doesn't need to reach the possession of amphetamine conviction because the sentencing guideline will work out exactly the same. You probably wouldn't even care if we didn't reach your cultural assimilation issue either, would you? I don't know if I — that's a very difficult question for me to answer, Your Honor. I think — Well, it's a system anyway, don't you? Who's got all the discretion in the system? Who preserves what? Who's charged with what? You're the man in these systems. I wish that were true, Your Honor. With regards to the cultural assimilation appeal, if I may make a few comments on it, I think that this situation is a little different than the situation which would justify a downward departure. What situation do you think would justify a downward departure for cultural assimilation? I think if you have a defendant who, for the most part, has led a law-abiding life, has been deported, and then reenters that first time, I think that defendant — But for you, the argument that now you're making on behalf of the government is that the downward departure for cultural assimilation is per se not available if you've been deported more than once. I think — I don't know about per se, Your Honor, but I do think that that defendant must make a greater showing. But don't you think that just the fact that he keeps coming back here shows that this is his country, that he believes this is his country? Your Honor, I believe that his lawful cultural assimilation ends the first time he's deported. And I can understand — His lawful cultural assimilation? I've never heard of that. Well, Your Honor, what my — I guess my argument to the Court's question is simply that it doesn't — it seems inappropriate to reward a defendant to return more often because that would show he's more culturally assimilated. Why is this a reward? This is — these are factors set forth by the Sentencing Commission in Congress of what the district court judge is supposed to consider. And some of them increase the sentence and some of them decrease the sentence. It's not a reward system. No, Your Honor, but — and defendant made the same example that the Court's making. I just see — it seems to me that when you compare two defendants, one who's only reentered once and another defendant who's illegally reentered 20 times, it gives the wrong incentive to say the one who's reentered 20 times therefore must be more culturally assimilated and therefore deserving of a greater departure. That seems to me a completely backwards result. And that's essentially the argument that — that we're trying to put forth. Someone who has repeatedly reentered the country shouldn't get a greater downward departure because he's more culturally assimilated, as evidenced by the increased number of times they reenter. And, Your Honor, I believe that the Narcotics Convention, that argument on our cross-appeal is set forth thoroughly in our briefs. And unless the Court has any specific questions with regards to that, I will address the final issue, which is the Rule 12 issue. With regards to the Rule 12 issue raised by defendant in his opening brief, the district court had discretion under 12d to defer ruling on that issue. And, frankly, those were sentencing issues that were raised by defendant pretrial. Had the district court made a decision on those issues, it possibly could have been just an advisory decision. If the defendant had gone to trial and actually lost, that whole analysis by the district court would be completely unnecessary. In fact, it's — it's, frankly, just a resource issue. The district court, being overburdened as it is, shouldn't have to decide that issue pretrial. And nothing in Rule 12 I would submit requires them to do so. In fact, the sentencing hearing in this case was a multi-day hearing, and it took a significant amount of time and hours and argument by all counsel, as well as exhaustive briefs. So I would argue that the district court was correct in not ruling on those issues pretrial or pre-plea. Thank you, Your Honor. Thank you, Counsel. I'll just respond briefly to a couple points. Nobody's arguing here that a defendant should be rewarded for multiple reentries. The point is in the cultural assimilation departure, as Judge Carter found, that Mr. Hernandez-Garcia was motivated to return to the country to be with his family, and that's what distinguished him from the hardline defendants. As the Court points out, the fact that he does reenter multiple times may be some evidence of that, but that's not suggesting that he's being rewarded. In relation to another defendant who may have only reentered once, that may be a grounds for the other defendant to receive a greater departure, everything else being equal. But it's certainly not meaning — it's not to suggest that the defendant, such as Mr. Hernandez, is being rewarded. On the — the other issue on the government's cross-appeal that was not addressed by the government and still has not been addressed is this authority to prosecute the cross-appeal. The government claims it received authority from the Solicitor General, but we've yet — this Court, there's nothing before this Court, no record, nothing. I think there's a letter. We haven't seen it. Nobody's seen it. They chose not to submit it. And that's what distinguished this case from Petty, where although the letter came after the fact, it did come. We don't have that in the record here. We have the government's representation, and it's briefed that it received the authority, but we have nothing to show that in the record. And finally, on the — on the 11-377 issue, the simple possession being an aggravated felon. I did submit supplemental authority last week on the Caceres-Gutierrez case, where the Court held that simple possession is not an aggravated felony in the immigration context. And now we have a — a dichotomy here in the Ninth Circuit as well as at least two other circuits where we interpret the exact same law one way in the immigration context and give it a contrary interpretation in the criminal context. This is an issue that is going to keep coming up again and again and again. It is also an issue that is based — it keeps coming up because of the Ibarra-Galindo opinion, which has, if not overruled, the premise underlying the opinion has been overruled. And that was — that is the Zarate-Martinez case, the Garcia-Omeda case, both of which have implicitly been overruled by an in vain decision of the Court. Those two opinions are what Ibarra-Galindo was premised on, and therefore — and it's for that reason that the reasoning of Ibarra-Galindo is no longer good law and no longer binding on this Court. And that is the argument that I essentially put forth in my brief, is that Corona-Sanchez, by overruling Zarate-Martinez, Garcia-Omeda, which, as Ibarra-Galindo says in it, it was bound by those decisions in analyzing the issue as a two-part inquiry. One a felony, two punishable under the Controlled Substance Act. It adopted that analysis because of those cases, yet those cases have now been overruled. And I submit that the analysis is no longer valid, particularly in light of the Caceres-Gutierrez opinion that came down last week. And if the Court does not have the opportunity to read that opinion, I would — I'd ask the Court to do so because it gives a lengthy, lengthy description of the legislative history leading to the definition of drug trafficking crime. And it persuasively demonstrates that Congress never intended this definition that has now been applied in seven circuits throughout the country, only in the criminal context, whereby simple possession, if the State punishes it as a felony, is going to be treated as a drug trafficking crime. And that's the situation we have now that is going to continue to create issues in these types of cases which now represent more than half of our caseload in the Public Defender's Office. So I'd ask the Court to reach that issue. Thank you. Thank you. All right. Thanks very much. As I said, the case is under submission. The campus where it is. And I think you should both look for it shortly. Thank you very much, both of you. The case just argued is submitted. The Court will stand in recess for the day. Thank you.
judges: Browning, Reinhardt, Wardlaw